745 S.E.2d 97

Robert Troy TAYLOR, Petitioner,

v.

STATE of South Carolina, Respondent.

Appellate Case No. 2009–123871.

No. 27272.

Supreme Court of South Carolina.

Submitted Sept. 1, 2012.

Decided June 19, 2013.

Rehearing Denied July 25, 2013.

352

Jeremy A. Thompson of Columbia, South Carolina, for Petitioner Robert Troy Taylor.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Christina J. Catoe, all of Columbia, South Carolina, for Respondent State of South Carolina.

Chief Justice TOAL.

Robert Troy Taylor (Petitioner) contests the post-conviction relief (PCR) court's finding that he did not receive ineffective assistance of counsel after his plea counsel failed to advise him of the recidivist consequences of his guilty plea, and did not

adequately investigate one of the charges prior to his guilty plea. We affirm.

## FACTUAL/PROCEDURAL HISTORY

On April 20, 2006, in Georgetown County, Petitioner pleaded guilty as charged to the indicted offenses of one count of criminal sexual conduct with a minor in the second degree (CSC 2nd) and two counts of committing lewd act upon a minor (lewd act).[1]

During his guilty plea, Petitioner stated unequivocally that he committed the acts alleged by the State, and engaged in a detailed colloquy with the court affirming that he entered into the plea voluntarily, knowingly, and intelligently. The circuit court sentenced Petitioner to concurrent sentences of imprisonment for a period of eight years, suspended upon the service of five years, plus three years' probation, for each of the charges. No direct appeal was taken with respect to these convictions or the sentences.

At the time of the Georgetown County plea, plea counsel also represented Petitioner on pending charges in Williams-

---

1. Petitioner waived presentment to the grand jury on the CSC 2nd charge and pleaded guilty as indicted to the two lewd act charges. Specifically, Petitioner pleaded guilty to sexual encounters occurring in 1988, 1989, and 1999 and involving three separate male minors. At Petitioner's plea, the State averred that Petitioner engaged in the lewd acts in 1988 and 1989 with Victims 1 and 2, both aged twelve at the time of the incidents, while Petitioner served as their youth pastor. According the Indictment, Petitioner forced these Victims to engage in inappropriate touching as they were sleeping in the bed with Petitioner. The CSC 2nd charge arose from an incident in 1999, in which Victim 3 alleged Petitioner sodomized him during a church-sanctioned trip to the beach during Petitioner's tenure as head pastor at Low County Baptist Church in Murrells Inlet, South Carolina. Although Petitioner admitted to the facts of these allegations during his plea, at sentencing, he presented the following mitigation: (1) Petitioner and his parents claimed Petitioner was a victim of generational sexual abuse, and as pastor at Low County Baptist, he often used the sexual abuse inflicted upon him as a child as a tool in his ministry; (2) many of the members of Petitioner's church were present at the plea to support him; (3) since the incidents, Petitioner had married and fathered three children, two biological children and an adopted teen-aged son from Romania; and (4) the young children submitted letters on Petitioner's behalf, and the teen-aged son spoke on Petitioner's behalf in court, pleading for leniency for Petitioner and claiming Petitioner had never sexually abused him.

burg County involving one of the Georgetown County victims. Unbeknownst to Petitioner at the time of the Georgetown plea, he became eligible to receive a sentence of life without the possibility of parole (LWOP), pursuant to section 17–25–45(A) of the South Carolina Code, or the "two-strike" law, upon a subsequent conviction of another "most serious" crime. *See* S.C.Code Ann. § 17–25–45(A) (2003).[2]

Petitioner proceeded to trial on the Williamsburg charges in July 2007, and a jury found him guilty of CSC 2nd and kidnapping. The circuit court judge sentenced Petitioner to two consecutive LWOP sentences, pursuant to section 17–25–45 of the South Carolina Code, due to his prior conviction for CSC 2nd in Georgetown County. Petitioner filed a direct appeal upon his conviction in the Williamsburg County case, which was affirmed. *See State v. Taylor*, 396 S.C. 193, 720 S.E.2d 522 (S.C.Ct.App.2011).

On April 3, 2007, Petitioner filed an application for PCR, and an evidentiary hearing was convened on November 20 and 21, 2008.

At the evidentiary hearing, plea counsel admitted he did not advise Petitioner that his plea to CSC 2nd in Georgetown County could be used as a predicate offense that would expose him to an LWOP sentence on the Williamsburg County charges,[3] and that this was a grave mistake in his representa-

---

**2.** CSC 2nd is considered a "most serious" offense for purposes of sentencing enhancement under this section. *See* S.C.Code Ann. § 17–25–45(C)(1) (Supp.2011) (enumerating "most serious" offenses). At the time of Petitioner's plea, an LWOP sentence was mandatory under section 17–25–45(A). *See* S.C.Code Ann. § 17–25–45(G) (2003) (providing the provisions of section 17–25–45(A) are mandatory). Under its present iteration, section 17–25–45(G) provides that the Solicitor has discretion to seek sentencing enhancement under section 17–25–45(A). *See* S.C.Code Ann. § 17–25–45(G) (Supp.2011) ("The decision to invoke sentencing under this section is in the discretion of the solicitor.").

**3.** Plea counsel explained that the Williamsburg County charge was originally for lewd act, and at the time of the Georgetown County plea, counsel had not read the warrant indicating the charge had intensified, and he had not yet seen the discovery in the Williamsburg County case. However, plea counsel stated that he would have discussed the ramifications of pleading guilty in Georgetown with Petitioner if he realized the severity of the Williamsburg County charges. On the other hand, Petitioner testified that although he had been charged initially with

tion.[4]

Petitioner testified that he was unaware of the potential for an LWOP sentence in the Williamsburg County case until after he pleaded guilty to the Georgetown County charges.[5] He testified further that he and plea counsel never discussed that pleading guilty in Georgetown would result in a "strike," and that he would not have chosen to plead guilty in Georgetown County had he known the plea could expose him to an LWOP sentence on the Williamsburg County charges.[6]

Upon realizing his mistake, however, plea counsel testified he sought to mitigate the impact it would have on the Williamsburg County charges. To this end, plea counsel testified he approached the Solicitor in charge of Petitioner's case in Williamsburg County, and they came to an informal agreement under which the Solicitor would allow Petitioner to plead to the lesser-included offense of lewd act with no

---

lewd act in Williamsburg County, he became aware of the increased severity of the Williamsburg County charges in November 2005. Petitioner testified that he was unaware until the PCR hearing that plea counsel misapprehended the severity of these charges in Williamsburg County at the time of his Georgetown County plea.

4. For example, at one point during the proceeding, plea counsel explained: "And—And I'm gone [sic]—I'm going to continue to say this: I made a mistake in this case. The mistake is I didn't tell [Petitioner] about the second strike.... I certainly will never make that mistake again."

5. Petitioner testified he understood that all of his charges, including those alleged in Williamsburg County, were connected and that he "was taking the trash out at the same time.... up until [he and plea counsel] literally were walking through the door to go in front of [the plea judge]." Petitioner testified that, "at that point, [plea counsel] said, 'I was not able to take care of the stuff in Williamsburg, but go ahead and do this, and we'll take care of that later.'"

6. Conversely, plea counsel testified that Petitioner chose not to proceed to trial on the Georgetown County charges as initially planned because, prior to trial, his wife's divorce attorney provided a disc to the Solicitor containing a recorded conversation in which Petitioner admitted to the facts of the Georgetown County allegations. Plea counsel testified that once Petitioner listened to the recorded conversation, he decided to plead guilty to the Georgetown County charges instead of proceeding to trial. At the PCR hearing, Petitioner denied the conversation related to the crimes charged and that he decided to plead guilty because of the existence of the recorded conversation.

sentencing recommendation made by the State during the plea. Plea counsel testified he was confident that Petitioner would receive an identical and concurrent sentence to his sentence for the Georgetown County charges. Plea counsel testified the deal was contingent upon Petitioner's acceptance of these terms, yet Petitioner remained adamant that he would not plead guilty to the Williamsburg County charges. Around this time, the relationship between Petitioner and plea counsel began to deteriorate because Petitioner was angry with plea counsel for failing to inform him of the consequences of the Georgetown County plea. Therefore, prior to the formalization of the agreement orchestrated by plea counsel, Petitioner fired plea counsel and hired new counsel to handle the Williamsburg County case. Petitioner's new counsel never communicated with the Solicitor concerning the plea deal, and Petitioner proceeded to trial on the Williamsburg County charges.

At the evidentiary hearing, the PCR court also questioned Petitioner extensively about the particulars of his exchange with the Georgetown County plea judge, and Petitioner admitted that he declared unequivocally at the plea that he was guilty of the charges and subsequently engaged in a lengthy colloquy with the plea judge concerning the voluntariness of his plea. However, Petitioner asserted that he was not in fact guilty of CSC 2nd, and that plea counsel failed to investigate evidence that would have exonerated him.

Specifically, Petitioner pointed to a discrepancy in the alleged date on which the CSC 2nd occurred. The arrest warrant indicated the CSC occurred in June or July 1999. Shortly before the Georgetown County plea, the indictment was prepared, alleging the CSC 2nd occurred "on or about August 5, 1999 through August 7, 1999." According to the statement of facts presented at the plea proceeding, the victim alleged he and Petitioner had gone to the beach. When Petitioner discovered the boys waiting to shower at the church, he offered to allow the victim to shower at his home, where they engaged in the sexual act forming the allegations against Petitioner.

Petitioner presented evidence at the PCR hearing that the showers at the church were not in operation that summer,

which he claimed plea counsel could have presented as evidence to refute the victim's testimony for either the June/July dates or the August dates. In addition, Petitioner testified he was assisting several members of the church with renovations on another member's home on August 5–7, 1999. Therefore, he claimed he could not have committed the crimes on the dates alleged in the Indictment. Although Petitioner claimed he would not have pleaded guilty to the Georgetown County charges had he known about the date change in the Indictment, the Record reveals that Petitioner was advised by the time of the plea that the dates for the alleged CSC 2nd had changed to August 5–7. Moreover, plea counsel testified that Petitioner never advised counsel of his potential alibi or the information available to him for purposes of discrediting the victim's testimony about the showers at the church. In fact, plea counsel testified that, prior to the plea, Petitioner informed him he knew of a witness who would exonerate him. However, counsel testified that when he interviewed the supposed witness, he remembered nothing about the time period in question or the particular beach trip. According to plea counsel, Petitioner never advised him of the fact that there were no working showers at the church. Furthermore, plea counsel testified he did not discover any information which would have aided Petitioner in defending against the CSC 2nd charge.

The PCR court issued an Order of Dismissal denying Petitioner's application as to all issues. Specifically relevant to this appeal, the PCR court found that the recidivist consequence of Petitioner's plea resulting in enhancement of Petitioner's sentence was a collateral consequence of the plea about which counsel had no duty to advise Petitioner. The PCR court further found that, even if the recidivist consequence were a circumstance about which Petitioner should have been advised, he did not find credible Petitioner's testimony that he would have gone to trial on the Georgetown charges had he known about the consequence, as Petitioner indicated he expected to be exonerated on the Williamsburg County charges. Consequently, Petitioner believed an LWOP sentence would have been "a mere future contingency that he thought would never apply to him." In addition, the PCR judge found Petitioner, a thirty-six year old, failed to point to

a significant difference between an LWOP sentence and the fifty year sentence, of which he would have to serve eighty-five percent, he would face on the Williamsburg County charges if he had not had a prior conviction for a "most serious" offense. Finally, the PCR judge found the Solicitor offered to allow Petitioner to plead to a lesser-included offense in the Williamsburg County case, which would not have subjected him to an LWOP sentence, and although plea counsel strongly urged Petitioner to accept the offer, Petitioner chose to exercise his right to a jury trial, thereby subjecting himself to an LWOP sentence. Accordingly, the PCR judge found Petitioner's LWOP sentence was a direct result of his knowing and voluntary decision to reject the plea offer in the Williamsburg County case and his ultimate conviction on those charges.

With respect to the failure to investigate claim, the PCR court found that Petitioner failed to prove counsel's performance fell below reasonable professional norms or that he suffered any prejudice because: (1) counsel and Petitioner reviewed discovery prior to the plea; (2) through his investigation, counsel learned pertinent witnesses had no memory of the events surrounding the allegations, but some recalled facts that were harmful to Petitioner's case; (3) Petitioner and his family were aware of the date change prior to the plea, and at no time did Petitioner tell counsel that the new dates impacted his decision to plead guilty; (4) the alibi testimony presented by Petitioner did not necessarily refute that the crime occurred; and (5) Petitioner never mentioned the inoperability of the showers to his counsel. Based on these facts, the PCR court found counsel's investigation was reasonable under the circumstances.

Petitioner appealed to this Court for a writ of certiorari, and we granted review on the briefs pursuant to Rule 215, SCACR.

## ISSUES PRESENTED

I.  Whether plea counsel's failure to advise Petitioner of the recidivist consequence of his plea on another pending criminal charge constitutes ineffective assistance of counsel.

II. Whether defense counsel's failure to conduct a sufficient investigation into the criminal sexual conduct charge constitutes ineffective assistance of counsel.

### STANDARD OF REVIEW

■ On appeal in a PCR action, this Court applies an "any evidence" standard of review. *Cherry v. State,* 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). The "PCR court's ruling should be upheld if it is supported by any evidence of probative value in the record." *Speaks v. State,* 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008) (citing *Cherry,* 300 S.C. at 119, 386 S.E.2d at 626).

■ A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI; *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Where allegations of ineffective assistance of counsel are made, the question becomes, 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Butler v. State,* 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985) (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052). As such, courts evaluate allegations of ineffective assistance of counsel using a two-pronged test. *Cherry,* 300 S.C. at 117, 386 S.E.2d at 625 (citing *Strickland,* 466 U.S. at 668, 104 S.Ct. 2052). First, the applicant must demonstrate counsel's representation was deficient, which is measured by an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. "Under this prong, '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Cherry,* 300 S.C. at 117, 386 S.E.2d at 625 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). Second, the applicant must demonstrate he was prejudiced by counsel's performance in such a manner that, but for counsel's error, there is a reasonable probability the result of the proceedings would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

■■ In the context of a guilty plea, the deficiency prong inquiry turns on whether the plea was voluntarily, knowingly, and intelligently entered. *Anderson v. State*, 342 S.C. 54, 57, 535 S.E.2d 649, 651 (2000); *see also Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970))). "The second, or 'prejudice,' requirement ... focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. 52 at 59, 106 S.Ct. 366. In other words,

A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial.

*Holden v. State*, 393 S.C. 565, 572, 713 S.E.2d 611, 615 (2011) (quoting *Rolen v. State*, 384 S.C. 409, 413, 683 S.E.2d 471, 474 (2009)); *see also Hill*, 474 U.S. at 59, 106 S.Ct. 366 (footnote omitted). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007) (citations omitted).

## LAW/ANALYSIS

### I. Counsel's Failure to Advise on Recidivist Consequences of Pleading Guilty

■ This petition presents the novel question of whether plea counsel's failure to advise Petitioner of CSC 2nd's status as a "most serious" offense, which could be used to enhance his sentence for pending charges under section 17–25–45, constitutes ineffective assistance of counsel.

Petitioner argues that the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), forecloses this Court from considering

the direct/collateral consequences distinction and consequently renders plea counsel's performance deficient in this case.[7] On the other hand, the State argues that the Supreme Court never meant for *Padilla* to apply retroactively, but regardless, *Padilla's* application is limited to the consequence of deportation.[8] In the alternative, Petitioner argues his plea was still involuntarily entered because of plea counsel's failure to inform him of the recidivist consequences of pleading guilty to CSC 2nd under our State's direct/collateral consequence distinction. On the other hand, the State argues that the LWOP sentence was not a certainty at the time of the Georgetown plea because Petitioner's receipt of an LWOP sentence "required application of legal principles entirely extraneous to the criminal statutes" in question, and the "future imposition of an LWOP sentence was entirely contingent upon events occurring after Petitioner's guilty plea, and upon actions taken by individuals other than the plea court." Thus, Respondent contends, the recidivist consequence was collateral.

In our opinion, Petitioner's *Padilla* claim is a red herring, as *Padilla* has no application to Petitioner's plea, and

---

7. In *Padilla*, the PCR petitioner had lawfully resided in the United States for forty years, and faced deportation after he pleaded guilty in Kentucky to transporting a large quantity of marijuana in his truck. *Padilla*, 130 S.Ct. at 1477. On collateral attack, the petitioner argued his counsel rendered deficient advice for failing to inform him of the deportation consequence of pleading guilty to the drug charge, but also affirmatively advising him prior to his plea that he "did not have to worry" about his immigrant status. *Id.* at 1478. In actuality, upon pleading guilty, deportation under the circumstances became "virtually mandatory." *Id.* The Kentucky Supreme Court denied Petitioner relief, classifying deportation as a collateral consequence, and therefore holding the Sixth Amendment did not shield the petitioner from his attorney's wrong advice concerning the immigration consequences of his conviction. *Id.* at 1478 & 1481. On appeal, the United States Supreme Court reversed due to the unique nature of deportation, stating that deportation could not be categorized as either a direct or collateral consequence. *Id.* at 1481–82 (internal citations omitted). Thus, the Supreme Court held that plea counsel was defective in failing to affirmatively advise the criminal defendant whether his guilty plea carried a risk of deportation. *Id.* at 1483–84.

8. Incidentally, during the pendency of this Court's consideration of this case, the United States Supreme Court held that *Padilla* does not apply retroactively. *Chaidez v. United States*, —— U.S. ——, 133 S.Ct. 1103, 1107, 185 L.Ed.2d 149 (2013).

further, we need not determine whether or not the failure to advise of the recidivist consequences of a plea is a direct or collateral consequence here because Petitioner cannot demonstrate that he was prejudiced by counsel's mistake, which is fatal to Petitioner's claim. *See Roscoe v. State,* 345 S.C. 16, 20 n. 6, 546 S.E.2d 417, 419 n. 6 (2001) ("Although we have consistently held a defendant must have a full understanding of the consequences of his plea and of the charges against him, ... the defendant must also demonstrate prejudice to be entitled to relief on PCR." (internal citations omitted)). To satisfy the prejudice prong, Petitioner must prove, through the presentation of probative and credible evidence, that he would have gone to trial instead of pleading guilty but for counsel's deficient advice. *See Smith v. State,* 369 S.C. 135, 139, 631 S.E.2d 260, 261–62 (2006).

Despite Petitioner's assertions to the contrary, there is probative evidence in the Record before us that he would not have chosen to proceed to trial on the Georgetown County charges had counsel told him about the strike.

The PCR court found that Petitioner lacked credibility, and neither Petitioner nor the witnesses he called to testify provided specific reasons why knowledge of the recidivist statute would have caused Petitioner to change his plea. More importantly, the PCR court found that Petitioner expected to be exonerated in the Williamsburg case, and therefore, at the time he pleaded guilty in Georgetown County, "[LWOP] would have been a mere future contingency that he thought would never apply to him." Moreover, the Solicitor had in fact offered Petitioner a plea bargain, allowing him to plead guilty to the lesser-included offense of lewd act, which would not have subjected Petitioner to the LWOP sentence. Plea counsel (prior to his discharge) strongly advised Petitioner to accept the plea bargain and claimed he was confident that Petitioner would receive a sentence concurrent to that received in Georgetown County. As stated by the PCR court, "[h]ad he agreed to do so, [Petitioner] most likely would not have served any additional time in prison, and he absolutely would not currently be serving a[n] [LWOP] sentence." Thus, the PCR court found "that [Petitioner] ... proceeded to trial in Williamsburg with full awareness that he would receive [an LWOP sentence] if convicted, and he alone had the opportuni-

ty to completely avoid what might be considered a harsh result." We could not agree more with the PCR court's assessment. In addition to the reasons cited by the PCR judge, we note that counsel presented additional evidence at the PCR hearing that the catalyst for Petitioner's decision to plead guilty to the Georgetown County charges was listening to a tape recording in the possession of the Solicitor detailing his involvement in the incidents forming the allegations against him.

Thus, under these facts, we hold that counsel was not ineffective for failing to inform Petitioner of the recidivist consequence of his guilty plea because Petitioner has not demonstrated he was prejudiced by counsel's deficient performance.

## II. Failure to Investigate

■ Petitioner contends plea counsel was ineffective in failing to investigate the CSC 2nd charge when Petitioner could show inaccuracies in the victim's claims concerning the dates of the alleged crime. We disagree.

Specifically, Petitioner argues that because his arrest warrant stated the CSC 2nd allegedly occurred "between the date[s] of June 01, 1999 and July 30, 1999," but the Indictment provided to him prior to his plea indicated the CSC 2nd occurred "on or about August 5, 1999 through August 7, 1999," which were also the dates provided to the plea judge by the Solicitor during the plea as the potential dates the CSC 2nd could have occurred, counsel should have investigated these factual discrepancies. Petitioner further claimed that the CSC 2nd could not have occurred between the dates of August 5–7, 1999, and presented evidence in support of this claim at the PCR hearing.

■ Counsel has a duty to undertake reasonable investigations or to make a decision that renders a particular investigation unnecessary. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. Thus, "[a] criminal defense attorney has the duty to conduct a reasonable investigation to discover all reasonably available mitigation evidence and all reasonably available evidence tending to rebut any aggravating evidence introduced by the State." *McKnight v. State,* 378 S.C. 33, 46, 661 S.E.2d

354, 360 (2008) (citation omitted). In reviewing a claim that defense counsel failed to properly investigate a defense to a crime, a court's principle concern is whether the investigation *"was itself reasonable." Wiggins v. Smith,* 539 U.S. 510, 522–23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (emphasis in original) (citation omitted). Moreover, counsel's decision not to investigate should be assessed for reasonableness under all the circumstances with heavy deference to counsel's judgment. *Simpson v. Moore,* 367 S.C. 587, 597, 627 S.E.2d 701, 706 (2006).

The PCR court found: (1) Petitioner was aware of the date change on his CSC 2nd indictment prior to entering his plea, and did not advise counsel the new dates impacted his decision to plead guilty; (2) Petitioner unequivocally admitted his guilt at the plea proceeding, which was in "sharp contrast" to the allegation that he had an alibi; (3) the indictment alleged the incident occurred "on or about" August 5–7, and was not limited to those specific days; (4) Petitioner's alibi was only for August 5–7, and, therefore, did not cover the entire period; and (5) Petitioner failed to advise counsel of his contention that the showers at the church were not working the summer of the incident, and counsel had no reason to suspect otherwise. Thus, the PCR court concluded that plea counsel's investigation was reasonable in light of the circumstances.

We agree with the State that probative evidence in the Record supports the PCR court's findings. *McCray v. State,* 317 S.C. 557, 559, 455 S.E.2d 686, 687–88 (1995) (citation omitted) (this Court must affirm the rulings of the PCR judge if there is any evidence to support the decision). Thus, we affirm the PCR court's finding that plea counsel conducted a reasonable investigation under the circumstances.

CONCLUSION

For the foregoing reasons, the decision of the PCR court is **AFFIRMED.**

KITTREDGE and HEARN, JJ., concur.

PLEICONES and BEATTY, JJ., concur in result only.