**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Dameion Jermiah Rivers, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2017-002353

———————————

Appeal from Chesterfield County
Roger E. Henderson, Circuit Court Judge

———————————

Unpublished Opinion No. 2022-UP-359
Heard February 16, 2022 – Filed September 21, 2022

———————————

**AFFIRMED**

———————————

Appellate Defender Taylor Davis Gilliam, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Chelsey Faith Marto, both of Columbia, for Respondent.

———————————

**PER CURIAM:** Petitioner Dameion J. Rivers brings this post-conviction relief (PCR) challenge to his guilty plea, asking for a new trial on the basis that plea counsel (1) did not adequately investigate the testimony of a witness and (2)

misinformed Rivers about when Rivers would become eligible for parole. We affirm.

On August 27, 2007, Tavish Dunlap (Victim) was shot outside Pop's Gameroom in Pageland. Victim was airlifted to a Charlotte hospital, where he was pronounced dead.

Rivers was indicted for murder and possession of a weapon during the commission of a violent crime and proceeded to trial on August 30, 2010. Among the evidence against him was a statement given by Kory Little to police, indicating that Rivers shot Victim. Rivers pled guilty to voluntary manslaughter and possession of a weapon before the second day of the trial began. At the plea hearing, Rivers told the circuit court that he did not intend to shoot Victim, saying: "I never even pulled the trigger. I never pulled the trigger. I fell back on the car. The gun went off, and it hit him."

Plea counsel told the court that he was hesitant about a self-defense strategy because "the first thing is, was he at fault in bringing about the immediate difficulty," and the "duty to retreat" could have been an issue. Additionally, counsel said: "I would never get an accident charge to the jury because he was acting unlawfully to start with."

During the plea colloquy, the circuit court and Rivers discussed whether Rivers had been informed of the state's "no parole" policy for certain crimes. The court asked: "have you discussed with your attorney the 85 Percent Rule or anything like that? Parole eligibility?" Rivers responded: "No, sir." After further discussion, the court declared that it found Rivers's "decision to enter this plea is freely, voluntarily and intelligently made," then imposed a sentence of 19 years for manslaughter, in addition to a concurrent five-year sentence for the plea related to weapons possession.

In 2011, Rivers filed a PCR application. Rivers challenged his guilty plea on several grounds, the relevant ones for this appeal being that plea counsel mistakenly advised Rivers that he would be eligible for parole after having served sixty-five percent of his sentence; and that plea counsel did not interview Little.

At the PCR hearing, Rivers testified that his plea counsel "said as long as I don't get in trouble [during his confinement], I do 65% and I can come home." Rivers said that if he had known differently, "I would've pled not guilty. I would've [gone] to trial." Rivers also testified that if he had known about certain issues with Little's statement, "I believe I would've pled not guilty and [gone] to trial because

then I would [have] been able to dispute the State's theory that I brought on [the] initial difficulty by stepping out [of] the car with a gun . . . ."  Rivers also said that the gun was in his pants when he got out of the car, rather than in his hand.

Little testified that he had been coerced into writing the statement incriminating Rivers.  However, Little confirmed that he was at Pop's when the shooting occurred.  He also testified that "a car pulled up and somebody got out [of] the car with the long gun, I don't know who it was because it was dark."  According to Little, the person from the car argued with the victim then "was backing up trying to get back in the car."  Little "heard a shot go off[, he] saw [the victim] fall[,] and [he] ran inside Pop's and called 911."  Little said his statement identified Rivers only because of the pressure from the police and he would have told Rivers's plea counsel had he been interviewed.

Plea counsel also testified at the PCR hearing.  He explained his decision not to interview Little.  "Well, I probably wouldn't get anything but a regurgitation of what he already had given in a statement.  I mean, I don't necessarily try to interview people who I know are going to be against me, are going to testify against me in court for the State."  Plea counsel said the statement informed his advice to Rivers to plead guilty.  Plea counsel also answered affirmatively when PCR counsel asked if knowledge of Little's recantation "would . . . have given you any ground to advise him, Mr. Rivers, differently."  Later in the hearing, discussing the impact of the testimony at the PCR hearing by Little and another witness,[1] plea counsel explained that he would have changed his advice "[b]ecause you've got, obviously, a strong self-defense argument and even if the gun went off accidentally, you know, I think you [] might still get a charge on it[,] everything you wanted."

However, plea counsel denied misstating the parole eligibility threshold, testifying that he "would've said 85% of that even though I didn't reference it -- even though I didn't reference it in the guilty plea, I know I told him 85%."  Plea counsel said he "should've spoken up" when Rivers suggested at the plea hearing that he was unaware of the 85% requirement.  "But I -- it's so automatic that I would've told him 85% because those are traditional run-of-the-mill arguments in PCR[]s that I've faced for the last 35 years since the [statute] was in [place]."

Plea counsel also testified: "I feel a lot more comfortable about being here in this chair with him being sentenced to eighteen (18) [years] than I [would] having lost a trial and he's looking at trying to get out from underneath a life sentence."

---

[1] This court did not grant certiorari on the question of evidence from the other witness.

Noting his perception of the conservative bent of Chesterfield County, plea counsel essentially stood by his advice. "I'm glad Dameion took that plea."

The PCR court denied relief on all grounds. Specifically, the court found plea "[c]ounsel's testimony credible[] and that the testimony presented by Applicant and his witnesses was less than credible." The PCR court found that plea counsel was not deficient and Rivers had shown no prejudice from plea counsel's actions. Analyzing Little's testimony under the rubric of "newly-discovered evidence," the PCR court rejected the notion that the testimony was "so material to the issue of guilt or innocence that it would have reasonably led to an acquittal by a jury."

Rivers filed a Rule 59(e) motion. The PCR court denied the motion.[2] This appeal followed. In October 2020, this court granted certiorari as to plea counsel's investigation of Kory Little and his advice on parole eligibility.

## I.    Counsel's Pretrial Investigation

Under *Strickland v. Washington*, "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984).

> In the context of a guilty plea, the court must determine whether 1) counsel's advice was within the range of competence demanded of attorneys in criminal cases—i.e., was counsel's performance deficient, and 2) [] there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty.

*Smith v. State*, 369 S.C. 135, 138, 631 S.E.2d 260, 261 (2006); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (footnote omitted)). In *Lee v. United States*, the U.S. Supreme Court noted:

---

[2] The record includes an amended order denying the Rule 59(e) motion; the only thing that appears to have been changed from the original order was the county where it was signed.

> A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea.

*Lee v. United States*, 137 S. Ct. 1958, 1966, 198 L. Ed. 2d 476 (2017) (citation omitted); *see id.* at 1967 n.3 (stating that "[w]here an attorney error allegedly affects how a trial would have played out, we analyze that error's effects on a defendant's decisionmaking by making a prediction of the likely trial outcome.").

In this case, the PCR judge properly found that Rivers was not prejudiced by plea counsel's alleged ineffectiveness in refusing to conduct a more thorough investigation.

We acknowledge that our supreme court has found that the undisputed testimony of a petitioner that he or she would not have pleaded guilty can, on its own, form the basis for a finding of prejudice. *See, e.g., Alexander v. State*, 303 S.C. 539, 543, 402 S.E.2d 484, 485–86 (1991) ("[T]he only evidence in the record on this point is petitioner's own testimony that had trial counsel not misinformed him that he would face a potential life sentence if he proceeded to trial, he would not have pled guilty. Thus, the second part of the test has been met."); *Smith v. State*, 369 S.C. at 138, 631 S.E.2d at 261 (finding against petitioner, but noting: "The defendant's undisputed testimony that he would not have pled guilty to the charges but for trial counsel's advice is sufficient to prove that defendant would not have pled guilty.").

However, in at least one recent decision, the court has suggested that such testimony is not *always* enough to fulfill the prejudice prong. *See Stalk v. State*, 383 S.C. 559, 563, 681 S.E.2d 592, 595 (2009) (finding that "*Hill* makes clear that this prejudice prong ordinarily requires more than simply a defendant's assertion that but for counsel's deficient performance he would not have pled but would have gone to trial"). And in other cases, our supreme court has noted that such testimony can be outweighed by other evidence. *See Goins v. State*, 397 S.C. 568, 575, 726 S.E.2d 1, 4 (2012) ("Although Goins testified at the PCR hearing that he accepted the plea because of the erroneous advice on the suppression of the evidence, his testimony specifically was found not to be credible. We therefore find evidence to support the

PCR court's finding that Goins failed to prove he was prejudiced by counsel's ineffective assistance because he has not demonstrated he would have gone to trial absent the erroneous advice."); *Taylor v. State*, 404 S.C. 350, 362, 745 S.E.2d 97, 103 (2013) ("Despite Petitioner's assertions to the contrary, there is probative evidence in the Record before us that he would not have chosen to proceed to trial on the Georgetown County charges had counsel told him about the strike."); *see also Lee*, 137 S. Ct. at 1967 (finding, in a case about deficient advice regarding immigration consequences of a guilty plea, that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

In this case, there is little reason to believe that plea counsel's advice would have changed based on Little's recantation. *See Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction [of] whether the evidence likely would have changed the outcome of a trial."). That is because there is little reason to believe that the recantation evidence, even if heard by a jury, would have led to Rivers's acquittal. One of the major factors in plea counsel's decision to urge a plea, and Rivers's decision to take one, was the notion that Rivers's self-defense claim would be weakened by Rivers having presented a firearm in the confrontation with Victim. Little's testimony at the PCR hearing—"a car pulled up and somebody got out [of] the car with the long gun"—*supports* that version of events. Little claims the alleged coercion led to his identification of Rivers as the person stepping out of the car with the gun, but Rivers has at times conceded that he shot Victim.[3] *Cf. Glover v. State*, 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995) (stating, in a parenthetical, that because "an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all" (citing *State v. Robbins*, 275 S.C. 373, 375, 271 S.E.2d 319, 320 (1980)). Even the element of Little's PCR testimony that could have helped Rivers's potential accident strategy at trial—the suggestion that the individual from the car "was backing up trying to get back into the car"—is not enough "to undermine confidence in the outcome." *See Porter v. State*, 368 S.C. 378, 383–84, 629 S.E.2d 353, 356 (2006) ("[T]he applicant must show that there is a *reasonable probability* that he

---

[3] His testimony on this point has not always been clear.

would have insisted on proceeding to trial on the matter instead of pleading guilty." (emphasis added)), *abrogated on other grounds by Smalls v. State*, 422 S.C. 174, 810 S.E.2d 836 (2018); *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *see also State v. Goodson*, 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994) ("For a homicide to be excusable on the ground of accident, it must be shown that the killing was unintentional, that the defendant was acting lawfully, and that due care was exercised in the handling of the weapon." (citing *State v. Brown*, 205 S.C. 514, 521, 32 S.E.2d 825, 828 (1945)).

Nor is it determinative that plea counsel expressed some misgivings about his advice. We review for prejudice under an objective standard. *See Smith*, 369 S.C. at 138, 631 S.E.2d at 261 ("In the context of a guilty plea, the court must determine . . . if there is a *reasonable probability* that, but for counsel's errors, the defendant would not have pled guilty." (emphasis added)); *Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be *substantial, not just conceivable*." (citing *Strickland*, 466 U.S. at 693) (emphasis added)); *see also United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021) ("Consistent with the proposition that a defendant's say-so is not enough, we have indicated that this prejudice inquiry is largely an objective one."), *cert. denied*, No. 21-6685, --- S.Ct. ---- (May 31, 2022); *cf. Harrington*, 562 U.S. at 109–10 ("After an adverse verdict at trial[,] even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.").[4]

For those reasons, there is not a reasonable chance that Rivers would have decided to forego the plea he made, and therefore, he cannot show prejudice.

## II. Plea Counsel's Advice on Parole

Rivers also argues that the PCR court erred in failing to find that counsel's advice on parole was deficient. Given the testimony presented at the PCR hearing, the PCR court was justified in finding that the performance of counsel was not deficient.

---

[4] We recognize, of course, that the *Harrington* court made this comment in the course of its discussion about deficiency. However, we believe the central insight shows why the "reflection" of counsel should not be determinative.

There is evidence in the record to support the PCR court's ruling. Specifically, the PCR court found that plea counsel was credible, and plea counsel testified: "I know I told him 85%." That distinguishes this case from *Simuel v. State*, 390 S.C. 267, 271 & n.2, 701 S.E.2d 738, 739 & n.2 (2010). In *Simuel*, our supreme court concluded that the PCR court's ruling lacked evidentiary justification when counsel "state[d] that he 'probably' spoke to Petitioner about his right to a direct appeal because that was his normal practice." Here, if plea counsel's testimony is accurate, as the PCR court found it to be, then he advised his client properly.

**AFFIRMED.**

**GEATHERS and HILL, JJ., and LOCKEMY, A.J., concur.**